



**Mark E. Bini**
Direct Phone: +1 212 549 0296
Email: mbini@reedsmith.com

**Kaela Dahan**
Direct Phone: +1 212 549 4254
Email: kdahan@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

July 18, 2024

**Via ECF**

The Honorable Vincent L. Briccetti
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re: *United States v. Tilson*, 23-CR-640 (S.D.N.Y.)

Dear Judge Briccetti:

We write on behalf of the defendant Eliezer Tilson ("Eli") in connection with his sentencing in the above-referenced case, currently scheduled for August 1, 2024. For the reasons explained herein, we respectfully request that the Court grant a variance and sentence Eli to a six-month term of home confinement, together with a rigorous program of community service and spiritual counseling, in lieu of incarceration.

## I. Executive Summary

Eli Tilson never imagined the prospect of a felony on his record, but when confronted here with his crime from 2019, he admitted to his crime and pled guilty to an information without even being indicted. Eli is a caring friend and an extremely hands-on and devoted father of four young children. Aside from the instant matter, he has had no prior contact with the criminal justice system. Despite seeing his own father incarcerated at a very young age and, as the oldest of three boys, having to become a significant figure in his family, Eli has done his best to overcome his personal trauma. Eli's primary concern is caring for his four young children. Eli is terrified that his absence from his children's lives, at such a young and impressionable age, would have a devastating impact on their development – and he wants to put a stop to the destructive cycle set in motion by his father. A six-month period of home confinement, together with a rigorous program of community service and spiritual counseling, in lieu of incarceration, would allow Eli to remain with and care for his children, thus ensuring that he can provide them with the necessary care, love, and support they so desperately need.

Eli has already begun to use his mistakes in this case to better himself, as well as to seek to help others. He has used the challenges caused by his criminal conduct, which he deeply regrets, as an opportunity for introspection and spiritual growth. For example, he has been attending weekly "Crime and Consequences" classes given by The Aleph Institute, which focus on individual remorse,



introspection, and a commitment to growth and transformation. He has also begun providing deterrence classes to business owners and members of his community, during which he discusses his misconduct and the need to act with the highest ethics and morality in all aspects of life. And, as Rabbi Yossi Bryski from The Aleph Institute notes in his sentencing submission to the Court (attached hereto as Exhibit A), "[t]hese deterrence classes are already impacting participants." Most importantly, Eli is no longer involved in the sale or solicitation of securities in the real estate industry. He has completely separated himself from the business that led to the criminal conduct here and is now working as a contractor for a small construction company in Seattle specializing in residential renovations.

Furthermore, Eli has already paid, and will continue to pay, a steep price for his criminal conduct, which occurred in 2019. First, he has had to uproot his family from Israel and move to the United States because of this case. Eli was arrested in the Western District of Washington on July 10, 2023, after traveling to Seattle from Netanya, Israel with his family for his father-in-law's funeral. His young children, who have lived in Israel their entire lives, have had to enroll in school in Seattle, where they have had to make new friends and navigate linguistic and academic challenges. Eli's wife, Rosalyn, who was expecting their fourth child at the time of her husband's arrest, also had to give birth in the United States – where, unlike in Israel, health care is not free. Second, Eli is now a convicted felon. He has lost his good name and brought shame to his family. We respectfully submit that no further punishment is needed to deter Eli from further criminal conduct. Third, and finally, Eli is required to pay a significant financial penalty for his crimes. Notably, in 2020, prior to being charged with the instant offense, Eli admitted his criminal conduct to the victims, accepted responsibility for his actions, and quickly repaid $350,000 (more than half of the funds the victims had invested). Eli has been working to repay the remaining $300,000 owed to the victims. Moreover, as part of his plea agreement with the Government, Eli has agreed to a forfeiture money judgment of $300,000 and to pay $650,000 in restitution, of which Eli has already paid $350,000. Eli's incarceration would only delay or frustrate the repayment of the remaining $300,000 owed to the victims and further prevent his family's return to Israel.

Accordingly, we respectfully request that the Court grant a variance and sentence Eli to a six-month term of home confinement, together with a rigorous program of community service and spiritual counseling, in lieu of incarceration.

## II. <u>Personal Background</u>

Eli is a dual citizen of the United States and Israel. Born in 1986, Eli lived in Rockland County, New York for most of his childhood and young adult years. Eli was in high school in New York City when the United States was subject to the terrorist attacks of September 11, 2001. That event left a significant impression on him and inspired a desire to serve in the military. He also dreamed of attending medical school and becoming a neurosurgeon. After graduating high school and studying abroad for a year in Israel, Eli enrolled in a pre-med program at Yeshivah University in New York, earning an almost full academic scholarship. However, in May 2006, Eli was inspired to move to Israel and to join the Israeli army, where he served in an elite paratrooper unit for three years in various capacities, including as Commander and Lieutenant. He remains enlisted as an army reservist to this very day.

After the army, Eli applied to medical school in Israel to pursue his dream of becoming a neurosurgeon; however, his parents were suffering tough financial times. When Eli was just a young boy,



his father was incarcerated for a white-collar crime and, as the oldest of three sons, Eli had to help care for his family in his father's absence. That devotion and sense of responsibility carried forward even after Eli's father was released from prison. As a result, in or around 2010, when his parents began to struggle financially, Eli put aside his dream of becoming a doctor and began working to help support his family. He also attended night school in Tel Aviv and studied business management. Between 2010 and 2013, Eli worked multiple jobs, including as an operational manager for a global property and facility management company and as a business analyst for a company that developed software designed to predict stock price performance.

In 2013, while living in Israel, Eli founded a real estate company called Pancho Real Estate Holdings, Ltd. ("Pancho"). He also married his wife, Rosalyn Tilson. They have four wonderful young children together: Yosef (10), Daniel (8), Maya (5), and Yehuda (6 months). Eli and his family currently reside in Seattle, Washington with Rosalyn's recently widowed mother, where Eli works in construction.

## III. <u>Offense Conduct</u>

On December 7, 2023, Eli waived indictment and pled guilty to a one-count felony information charging him with a violation of the Travel Act, 18 U.S.C. §§ 1952(a)(3). The information charges that from October 2019 to December 2019, in the Southern District of New York and elsewhere, Eli used and caused to be used facilities in interstate and foreign commerce with intent to engage in monetary transactions in property derived from fraud in the sale of securities, a specified unlawful activity, in violation of 18 U.S.C. § 1957. ECF 19. Eli converted the victims' funds to his own use by sending multiple wires of funds in amounts exceeding $10,000 and by sending emails to assure the victims their funds would be returned to them. *Id.*

As alleged in the information and restated in the final Presentence Investigation Report ("PSR"), ECF 28, Victim 1 and Victim 2 (collectively, the "Victims") were investors living in Brooklyn, New York. PSR ¶ 11. The Victims each invested in the development of elder care facilities promoted by Eli named, respectively, Pancho Memory Care and Pancho Tomball, prior to the time period relevant to the instant conduct. *Id.*

The Domus Multifamily Real Estate Trust No. 2 ("Domus II") was an investment fund that focused on multifamily residential real estate projects in the United States. *Id.* ¶ 12. Domus II had contracted to buy two properties in or near Phoenix, Arizona. *Id.*

In October 2019, Eli approached the Victims with the opportunity to invest in Domus II and sent them the Domus II marketing materials. *Id.* ¶ 13. Mr. Tilson and the Victims met for dinner in a restaurant in Manhattan to discuss Domus II on or about October 30, 2019. *Id.*

On October 31, 2019, Eli instructed the Victims to wire their funds for investment in Domus II to an account held by Pancho Real Estate Capital, LLP that he controlled. *Id.* ¶ 14. Between November 1, 2019 and November 5, 2019, the Victims wired a total of $650,000 as investments in Domus II to the account designated by Eli. *Id.* ¶ 15.

However, Eli never transmitted any of the Victims' funds to Domus II. *Id.* ¶ 16. Instead, he used



some of the funds to Victim 1 and individuals and entities in the Southern District of New York and elsewhere in amounts exceeding $10,000 as dividends on their investments in Pancho Memory Care or as payments on prior debt incurred by entities unrelated to Domus II. *Id.*

On November 12, 2019, the Victims asked why their funds had not arrived at Domus II. *Id.* ¶ 17. The next day, on November 13, 2019, Eli falsely assured the Victims that Domus II had their funds. *Id.* ¶ 18. On November 23, 2019, Eli falsely said in an email to the Victims that he had sent the wire to Domus II, but it had not gone through yet. *Id.* ¶ 19. Eli then made additional false statements to the Victims and sent them falsified records. *Id.* ¶¶ 20-21.

On December 2, 2019, in a telephone call with the Victims, Eli confessed to the Victims that he had actually used their money "to bridge other things, and I was planning on money coming in right away to get you Domus." *Id.* ¶ 22.

## IV. <u>Sentencing Guidelines and Appropriate Sentence</u>

### A. Summary of Presentence Report Findings

We do not dispute the Probation Office's calculation of the Guidelines in this case. As the parties stipulated in the written plea agreement dated November 27, 2023, the November 2023 Sentencing Guidelines Manual applies to this case and, under U.S.S.G. §§ 2E1.2(a)(2), 2S1.1(a)(1), and 2B1.1(a)(1), the base offense level is 6. PSR ¶¶ 31-32. A 14-level increase is applicable, pursuant to § 2B1.1(b)(1)(H), based on the loss at issue ($650,000), which is more than $550,000 and less than $1,500,000. *Id.* ¶ 33. Factoring in a three-level reduction for acceptance of responsibility, as well as a two-level reduction for meeting the criteria set forth in § 4C1.1 for certain "zero-point offenders," the adjusted total offense level is 15. *Id.* ¶¶ 38-41. Eli has zero criminal history points, *id.* ¶ 44, thus his Guidelines range is 18 to 24 months' imprisonment. *Id.* ¶ 86.

### B. Consideration of the Factors Listed in 18 U.S.C. § 3553(a) Strongly Supports a Non-Guidelines Sentence

In determining an appropriate sentence under 18 U.S.C. § 3553(a)—one that is "sufficient, but not greater than necessary"—courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed to avoid unwarranted sentence disparities, provide just punishment, afford adequate deterrence, and protect the public. Applying these factors, we respectfully submit that a six-month term of home confinement, together with a rigorous program of community service and spiritual counseling, in lieu of incarceration, would achieve the goals of sentencing.

#### 1. <u>History and Characteristics of the Defendant</u>

Under Section 3553(a), the court must consider the "history and characteristics of the defendant" when imposing a sentence. 18 U.S.C. § 3553(a)(1). This factor permits sentencing courts to consider many aspects of the defendant's life when fashioning a fair and just outcome. Eli's personal history and characteristics strongly support a sentence of time served.



Aside from the instance case, Eli has led an exemplary life. Despite his crime, Eli has so many wonderful attributes that he's widely respected for; he's a loving husband and father, a devoted son and brother, and a wonderful friend to so many. The depth of love and caring that Eli feels and demonstrates in caring for his wife and four young children is striking to friends and family members who have witnessed it firsthand. Eli is an extremely hands-on parent, a tireless caretaker, and an amazing provider. As Eli's uncle, Dr. Don Zwickler writes, it would be "a devastation to his young family if he were to be detained or incarcerated for any length of time." Ex. C. Other supporters of Eli's character have shared the same sentiment, as reflected in the letters attached hereto. His brother, Yair Tilson, writes: "The prospect of Eli needing to serve time pains me and my family beyond words. My wife, kids, brother and parents are all extremely close with Eli, who has always served as the 'rock' of the family, and his absence would be immensely felt and will create a huge emotional strain on the family that could take years to repair." Ex. E. Eli's close friend, Yoel Ciment, writes: "Eli's incarceration will have a horrible impact on Eli's children and wife. With young kids especially a baby to not have their father present especially when they have grown accustomed to Eli's present and always being there and available for them at all times no matter what the situation is. This past year has been extremely hard on them as they suddenly and unexpectedly had to relocate to a foreign country away from everyone and everything that they know, which hasn't been easy on them in the slightest." Ex. K.

Community leaders in Seattle note how Eli is a "very devoted son-in-law to his mother-in-law who just lost her husband this past summer, trying to bring happiness to the family during recent trying times. It is impossible not to notice how he is always looking out for his wife who just had a precious baby … and how he is a great father to his four young children, taking them on outings, doing homework with them, and countless other activities. His children adore him, and we can tell how they try to follow his example of being a leader without wanting fanfare, helping others, and being respectful in all or interactions with them." Ex. L.

Eli's wife, Rosalyn, also highlights the devastating impact that Eli's incarceration would have on her and her children. She writes:

- "***My kids took up to him, love him, and need their daddy with them for their stability and self-security***. We need to break this cycle, and for Eli not to be around my kids would be very traumatic for them. He really is there everything and they are at such an important developmental stage in their lives that time away will affect them greatly."

- "***Eli and the kids are truly like one and we all rely heavily on him***. Eli makes sure to do homework with the kids, taking time to go over it and make sure they understand. As you can imagine, it is not easy for my kids that from one day to the next, they found themselves in a new school, speaking a new language, having to make new friends. Eli and I together have worked very hard to make the transition as easy as possible, but it takes a lot of effort. Eli puts that effort in not just with the mandatory schoolwork, but also learning with them extra, making time to speak in Hebrew to them, doing fun (well he things it is fun) Math and association games to make sure the kids are always learning and growing. ***He really is all about the kids***."

- "Eli has been ***my rock and support*** that gets me through every day."




Ex. D.

Eli has dedicated his life to his family and hopes to see his children grow and remain a daily part of their lives. He is a volunteer coach for his children's hockey league in Israel and plans to continue improving that program for his kids and the other children in the community. Eli has also devoted significant time and energy to charity work and community service. For nearly a decade, he has been volunteering for Leket, a national food bank in Israel that provides food to Holocaust survivors for the Sabbath. In 2019, shortly before the COVID-19 pandemic, Eli began volunteering for the Israeli police force. He has also performed substantial volunteer work for his synagogue, including serving as its president, and he has helped many children prepare for their Bar or Bat Mitzvah, all for free. His dedication to charity and community service is significant. As the letters to the Court reflect:

- "It would be a ***great loss to his town***, where he has served as a police officer and friend and ombudsman for his community … if he were to be detained or incarcerated for any length of time. ***They would all quickly notice a serious void***." Ex. C.

- "***Eli has always been the first to volunteer to help out***. Whether it be for the [hockey] league or pick up games or later on when his kids joined our program, to coach (for free). He has helped out financially (without players knowledge) to pay for those that couldn't afford to participate." Ex. I.

- Eli is a "***man with a huge heart and soul that only wants the best for his family and all of those around him***." He "means a lot to his teammates and the leagues and he is truly missed. We miss him as a coach too as he really was helpful and connected with the kids. Not to mention we miss his kids a lot." ***His absence "wouldn't just hurt him and his family but a community of people that he supports and is a part of***." *Id.*

- "I have watched Eli devote his dynamic leadership qualities to organizing community study groups and encouraging associates and friends to donate to provide food and clothing necessities to the underprivileged and downtrodden." Ex. J.

- "***Eli is always one of the first to volunteer when any task or volunteer opportunity arises***. He helps us to make our required quorum for praying, leads services, volunteers for security detail in the synagogue, and ***will do whatever needs to be done whether big or small***." Ex. L.

- Eli and his wife "**always hav[e] an open door** to whomever need[s] for whatever they need[]." Ex. K.

Mark Silver, a New York State Licensed Clinical Social Worker and lawyer who evaluated Eli, notes in his report:

> I have had the pleasure to meet with Eli and his wife, Rosalyn, for many hours and he is an amazing human being who has never turned to self-pity to contend with overwhelming traumas, but rather has focused on positive personal, family, and community behavior in the



> very best possible sense. ***There is no question in my mind that Eli will continue on a praiseworthy pathway if provided the opportunity to care for his wife and four children. Cumulatively, Eli is a perfect candidate for a non-custodial sentence given the overwhelming mitigation evidence***.

Ex. B (emphasis added).

While Eli makes no excuse for his criminal conduct, his criminal conduct is aberrational and is heavily outweighed by the many good things that Eli has accomplished in his life. A sentence of incarceration would disrupt the Tilson family and work a hardship on those who very much depend on his presence.

2. Nature of the Offense

Section 3553(a)(1) requires the Court to consider the "nature and circumstances of the offense" in determining an appropriate sentence. While we do not in any way question the seriousness of the conduct at issue, this matter involves an isolated incident in 2019. Eli is diligently working to pay back the remaining $300,000 owed to the victims.

3. Need to Protect the Public

In determining an appropriate sentence, the Court must weigh the need to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). We submit that given his good character, prior unblemished criminal history, compliance with the terms of his pretrial release, and continued participation in a program of spiritual counseling and community service, Eli poses no risk of recidivism.

4. Need for Deterrence

Another relevant factor is the need to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). As explained above, we submit there is no need for a prison sentence to achieve deterrence in light of the substantial penalties and repercussions Eli and his family have already faced. While Eli has no one to blame but himself, this felony conviction was a devastating blow to a man who, as reflected in the supporting letters attached hereto, was widely admired in his community. Eli cannot forgive himself for bringing shame upon his family. We submit that no further punishment is needed to deter Eli from further criminal conduct.

5. Need to Avoid Sentencing Disparities

Under 18 U.S.C. § 3553(a)(6), courts must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." We respectfully submit that a six-month period of home confinement, together with a rigorous program of community service and spiritual counseling, in lieu of incarceration, would ensure that Eli is treated fairly by comparison to others in his position. *See, e.g.*, *United States v. Powell*, 23-CR-315 (S.D.N.Y.) (Briccetti, J.) (defendant sentenced to time served after pleading guilty to conspiracy to commit wire fraud; submitted approximately 114 PPP loan applications, which contained materially false and fraudulent representations, seeking over $14.7 million); *United States v. Wojtowicz*, 19-CR-434 (S.D.N.Y.)



(Briccetti, J.) (defendant sentenced to time served after pleading guilty to conspiracy to commit wire fraud and wire fraud; defrauded 16 laboratory customers of approximately $1.5 million).

## V. Conclusion

Eli is painfully aware that his actions in 2019 were terribly wrong, and he longs to make amends. He knows that he, alone, is responsible for his actions, and he will live with this regret and remorse for the rest of his life. As the letters to this Court reflect, Eli is an asset to his family, his friends, and his community, and there are so many people who would suffer in his absence. Most importantly, four young children need their father as they confront the unique challenges that they will face, in addition to the challenges faced by all children as they develop through their most impressionable years. We believe that a six-month period of home confinement, together with a rigorous program of community service and spiritual counseling, in lieu of incarceration will facilitate Eli's continued rehabilitation and will also allow him to remain with his family who need him so much. For all the foregoing reasons, we urge the Court to grant a variance and sentence Eli accordingly.

We thank the Court for its attention to this matter.

Very truly yours,

*/s/ Mark E. Bini*
Mark E. Bini
Kaela Dahan

*Counsel for Defendant Eliezer Tilson*

cc: All counsel of record (by ECF)