# EXHIBIT A

B"H



THE ALEPH INSTITUTE

NATIONAL HEADQUARTERS
9540 Collins Avenue, Surfside, FL 33154
Phone: (305) 864-5553

WEST COAST BRANCH
4221 Wilshire Blvd, #170-6
Los Angeles, CA 90010
Phone: (424) 210-3685
www.aleph-institute.org

**Rabbi Yossi Bryski**
ybryski@aleph-institute.org

**Chairperson / Founder**
Rabbi Sholom D. Lipskar

**President**
Lloyd S. Rubin

**Board of Directors**
Robert Danial
Boruch Duchman
Joy Fishman
Stephen Fiske
Russel Galbut
Reuven Herssein
Daniel M. Holtz
Alberto Kamhazi
Sonny Kahn
Rabbi Aaron Lipskar
Rabbi Sholom D. Lipskar
Morris Mendal
Lloyd S. Rubin
Eric Stein
Sylvia Urlich

**Executive Director**
Rabbi Aaron Lipskar

**Director of Operations**
Moshe N. Barouk

**Director of Outreach Programs**
Rabbi Menachem M. Katz

**Director of Military Programs**
Rabbi Sanford L. Dresin

**Director of Advocacy**
Rabbi Zvi Boyarsky

**Director of Outreach Programs**
Rabbi Shua Brook

**Chief Financial Officer**
Yosie Lipskar

July 12, 2024

The Honorable Vincent L. Briccetti
United States District Judge
Southern District of New York
The Hon. Charles L. Brieant Jr.
   Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

Re:       ***United States v. Eliezer Tilson***
                Case No. 23 CR 640-01 (VB)

Dear Judge Briccetti:

I write on behalf of the Aleph Institute ("Aleph"), with respect and deference to the Court, regarding the sentencing of Eliezer Tilson ("Eli"). We wish to share our sentencing proposal that, we humbly submit, would further the goals of sentencing in achieving optimal results for Eli and for society. We are grateful for your consideration of this submission.

We genuinely hope and pray that we may be of service to the Court by providing the following meaningful alternative to incarceration for your consideration. We recommend that the Court consider a sentence for Eli consisting of six months of home confinement, together with a rigorous program of community service and spiritual counseling, in lieu of incarceration. We believe that incarceration would not provide any meaningful benefit to Eli or to society. In contrast, our proposed plan would be rehabilitative to Eli and beneficial to the community at large. We are hopeful that you will find that our presentation effectively addresses the compelling facts and circumstances specific to this case, and we are available to provide any additional input that may assist you in your sentencing decision.



THE ALEPH INSTITUTE

I. **THE ALEPH INSTITUTE**

The Aleph Institute ("Aleph") was formed in 1981 at the direction of The Lubavitcher Rebbe, Rabbi Menachem M. Schneerson, *may his merit shield us,* to provide support and rehabilitation to individuals enmeshed in the criminal justice and penal systems.[1] Aleph became a reality during a meeting between Rabbi Sholom D. Lipskar and the Honorable late Jack Weinstein of the U.S. District Court for the Eastern District of New York. Judge Weinstein wrote the following about Aleph: ***"[T]he Aleph Institute, and [its] associates understand and force us to face the fact that each person deserves to be treated with respect as an individual personality and not as . . . a faceless number."***[2] Judge Weinstein continued, "[Aleph's] assistance to defendants and their families provide standards of compassion and aid worthy of emulation . . . As a result of its good work, Aleph is widely known and respected by penal and judicial authorities."

Aleph's work in the realm of criminal sentencing has been devoted to the development of effective alternative sentencing options. Our many years of experience have taught us that, in certain cases, the goals of the criminal justice system can be accomplished by alternative means, without compromising the need to promote criminal justice goals such as rehabilitation, retribution, deterrence, and incapacitation. We work closely with courts, federal and state lawmakers, law professors, and penal experts towards our common goal of achieving outcomes that promote justice, lessen the burden on shared penal resources, reduce recidivism, and benefit offenders, together with their families and communities. We take seriously our mission, which former FBI director and retired U.S. District Judge, the Hon. Louis Freeh, eloquently summarized as "championing and delivering justice to people who have been overlooked or forgotten by the rule of law, giving them hope, relief from suffering and the chance to improve their lives and fortunes." We are further guided by our ethical teachings which emphasize that every individual – no matter his or her shortcomings – naturally has a positive purpose to fulfill in the world.

Since its formation, Aleph has submitted alternative sentencing recommendations in hundreds of criminal cases (federal and state) throughout the United States. We advocate for alternative sentences for individuals in whom we detect a deep sincerity and a genuine commitment to achieve meaningful personal growth. Further, we only advocate on behalf of individuals who have passed our rigorous screening process, and

---

[1] www.aleph-institute.org; *see, also*, Appendix: The Aleph Institute, attached hereto.
[2] Hon. Jack B. Weinstein, Prison Need Not Be Mandatory: There Are Options Under the New U.S. Sentencing Guidelines, 1 JUDGE J. 16, 28 (1989).

2


THE ALEPH INSTITUTE

we do not advocate for any individual unless we are confident that they do not pose a future threat to society. *We provide our services on a pro bono basis, motivated only by our sincere belief in the work that we do.*

We readily acknowledge that prison terms are often necessary as appropriate punishment for serious offenses and/or to protect the public from violent, predatory, or unrepentant offenders. Still, courts have observed that *"[i]ncapacitory sentences are usually unnecessary to increase public safety, or prevent recidivism; they place a tremendous financial burden on society through excessive incarceration."*[3] In our experience, lengthy periods of incarceration inhibit defendants from fulfilling their potential, and devastate the family and community left behind, breeding bitterness, anger, insensitivity, and eventual recidivism. Too many defendants "lose their claim to a future" when "lengthy prison terms" are substituted for "reasonable, innovative, and promising alternatives to incarceration."[4] We find that our sentencing philosophy is given excellent expression in these words from William Fitzpatrick, the former President of the National District Attorneys Association, who suggests that *"that we use prison for those we are afraid of, not those whom we are mad at based on their behavior."*[5]

## II.  ELIEZER TILSON

A.  Eli is a Strong Candidate for Alternative Sentencing

As we are aware that Eli's legal counsel has submitted a sentencing memorandum that includes detailed information relating to his background and personal history, we will not restate many of those factors here. However, as an organization guided by our ethical teachings, we believe it is appropriate and necessary that we mention certain highly compelling considerations that were central in creating our sentencing proposal.

1.  A Loving Husband and Father; A Pillar of his Community

    a.  *A Loving Husband and Father*

Eli and Rosalyn began dating more than 20 years ago. In 2012, after Eli returned to the United States following his military service in Israel, the two reconnected, and they

---

[3] *United States v. Rivera*, 281 F. Supp. 3d 269, 271 (E.D.N.Y. 2017).
[4] *United States v. Dossie*, 851 F. Supp. 2d 478, 478 (E.D.N.Y. 2012) (internal quotation omitted).
[5] April 26, 2016, letter to Senators Mitch McConnell and Harry Reid.

3

were married in 2013. Together, they have three sons and one daughter: Yosef (age 10); Daniel (age eight); Maya (age five); and Yehuda (six months old).

Friends and family describe Eli as "a devoted father and husband," as Dr. Daniel Spodek writes, "I have seen firsthand how wonderfully [Eli] treats his family as well as mine and others."[6] Eli's mother, Chavi, is Type 1 diabetic, and Eli often cares for her. She writes that "Eli had to look out for me if I had a diabetic shock or a diabetic related event . . . One time he even actually put aside his owns fears as I burnt my feet and came running to help me! He actually saved my life!"[7] Eli's father-in-law recently passed away from pancreatic cancer. Eli's wife Rosalyn explains that "when my father got sick, even before we knew it was cancer, Eli made sure to be always by his side . . . Whether it was to speak to doctors or stay up all night in the hospital or to watch the kids alone so I can be with my dad, Eli just did it."[8]

Eli's potential incarceration would be a tremendous hardship on his family, especially his four young children. Yaakov Tannenbaum and Rabbi Ari Hoffman (both from the Bikur Cholim-Machzikay Hadath Congregation in Seattle, Washington[9]) describe the enormous damage Eli's separation from his family would cause:

> "We know that Eli's potential incarceration will cause an extreme hardship on his family. The impact of his wife and mother-in-law having recently lost their husband and father, respectively, has been devastating. His role, as a loving father for his sons that he brings to synagogue and classes, will be impossible to replace during a prolonged absence and will be destructive to his family's well-being."[10]

Eli's mother-in-law, Debi Barber, echoes this sentiment, writing that Eli's and Rosalyn's young children are at a "very impressionable age," when "they need their father to guide them through life and teach them things."[11] Debi believes that Eli's separation from his children could impact the children's mental health and "create behavior problems they will have to deal with the rest of their lives."

We also fear the impact that Eli's incarceration may have on his young children. The devastating collateral damage stemming from incarceration is primarily inflicted upon

---

[6] Letter from Dr. Daniel Spodek.
[7] Letter from Chavi Tilson.
[8] Letter from Rosalyn Tilson.
[9] www.bcmhseattle.org.
[10] Letter from Yaakov Tannenbaum and Rabbi Ari Hoffman.
[11] Letter from Debi Barber.


THE ALEPH INSTITUTE

the children of those incarcerated. The damage to these children is vast, deep, and pervasive because it comes at an age when the child is in her formative stage – the most critical time in a child's life: "the consequences of incarceration on family members are numerous," and "children of incarcerated parents are among the most at-risk, yet least visible, populations of children. Parental incarceration serves as a significant risk factor for a host of negative consequences, particularly with respect to emotional and behavioral factors, physical care and custody, and context with the parents."[12] These effects manifest in poor self-esteem, under-performance in school, and drug use – and a child of an incarcerated parent is significantly more likely to enter the criminal justice system.

### b. *A Pillar of his Community*

During the time we have spent with Eli, we have observed that he is compassionate, empathetic, and generous with his time and efforts. He possesses an intense desire to care not only for his family, but also to contribute to his community and to society. If he sees a need, he is eager to step in and provide all the support he can, without seeking recognition or fanfare.

Eli supports his community by volunteering with his synagogue, distributing food to the elderly (including Holocaust survivors), serving as a volunteer police officer in his hometown in Israel, and teaching teenagers Hebrew and sports (Eli has long participated in and has a passion for hockey). Yaakov Tannenbaum and Rabbi Hoffman write that Eli "helps us make our required quorum for praying, leads services, volunteers for security detail in the synagogue, and will do whatever needs to be done whether big or small." Eli's wife Rosalyn confirms that her husband "would do these things not just when convenient for him but instead of doing things he wanted to do and without people even knowing." For example, during the COVID-19 pandemic, many of the elderly were unable to get their medication, and Eli distributed it to then, and "no one know it was him." Rosalyn adds that Eli continues to engage in charitable acts, "even here in Seattle under all this pressure; it is just a part of who he is."

---

[12] Kolina J. Delgado, The Impact of Incarceration on Families: A Summary of the Literature, WRIGHT STATE UNIVERSITY CORE SCHOLAR: PSYCHOLOGY at 14 (2011) < http://corescholar.libraries.wright.edu/psych_student/5>. *See, also,* John Hagan and Ronit Dinovitzer, *Collateral Consequences of Imprisonment for Children, Communities, and Prisoners*, 26 CRIME & JUST. 121(1999)

B"H

THE ALEPH INSTITUTE

2.   Profound Remorse; Commitment to Personal Growth and Change

Eli deeply regrets the actions that resulted in his conviction, and he lives with constant and profound remorse. He accepts responsibility for his actions and is also to learning and growing from this experience. He writes that "I fully recognize both the legal and moral wrongness of my actions. I did not set out to intentionally harm anyone, but harm I have caused, and for that, I am deeply regretful." He adds that "[i]f I could reach out to the victims directly . . . I would want to start by saying how sorry I truly am." Friends and family members have also observed Eli's profound remorse and regret. Eli's uncle, Dr. Don Zwickler, writes that he quickly sensed in Eli "profound embarrassment and great feeling and remorse" for his actions.[13] Dr. Daniel Spodek writes that Eli "has been very straightforward with me and others that he messed up and not only that he is remorseful but has made real changes to make sure any issues he had or caused are in the past." Eli's wife Rosalyn states that her husband is "truly remorseful and taking full responsibility for every bad decision he has made."

Not only has Eli experienced profound pain and remorse because of his actions, but he is committed to both learning from his experiences, and sharing what he has learned with others in his community. He writes that "I had a real problem with telling the truth. I have been working tirelessly on trying to better myself and really work on doing better." He explains that he has begun the process of *Teshuvah*, which in the Jewish faith literally means to "return," but is often translated as repentance. Eli describes how this process requires "understanding and admitting your bad decision, understanding how and why you did it (without excuses an honest assessment) and then behaving differently when in the same situation. I have taken this to heart."

Eli's process of repentance includes engaging in gainful employment and sharing his story with members of his community. Since February of this year, Eli has worked full-time in construction, including building renovations. In addition, he has begun providing deterrence classes during which he discusses his misconduct, and the need to act with the highest ethics and morality in all aspects of life. Eli explains that "I will tell my story honestly and with conviction because I believe if I can even help or deter one person who may be in a similar position, that would be such a blessing and can truly save a generation."

---

[13] Letter from Dr. Don Zwickler.



B.     Alternative Sentencing Proposal

Our proposal is specifically tailored to address the rehabilitative goal of sentencing. As many scholars, the Supreme Court, and the Rabbis at Aleph have all observed, prison is often not conducive to "promoting correction and rehabilitation."[14] This is because rehabilitation is a "forward-looking" concept, promoting resocialization by emphasizing "personal reform over punishment" and "illuminat[ing] the criminal's inner struggle,"[15] and as such only works when combined with an intense personal commitment to change. Perhaps understandably, though imprisonment may satisfy a thirst for retribution, the prison environment rarely inspires this commitment in the incarcerated individual. As Judge Richard Lowell Nygard once observed, "people – offenders included – change because they see something in themselves they do not like, and they reach down inside themselves and change it. Most criminal offenders who change for the better do so in spite of prison not because of it."[16]

Whereas prison may not promote rehabilitation, community-based programs like Aleph's proposal are often effective at restoring an individual's commitment to ethical behavior. The same characteristics that have made Eli such a source of strength for his own family and community will ensure that his efforts have a strong positive impact for those with whom he interacts under the terms of this proposal. In addition, Eli's program of rehabilitation will include community support and reinforcement. We believe that Eli will be able to rehabilitate himself through these efforts, and that, in the process, he will push others to reach their full potential.

As an organization motivated by the universal truths of moral and ethical behavior laid forth in Jewish law, we respectfully suggest that the following proposal would be an appropriate sentence for this offense in lieu of incarceration. We have designed Eli's proposed alternative sentence to be rehabilitative and intensive. We believe that Eli, his family, and his community would be better served by a sentence consisting of a six-month period of home confinement, and a program of community service and spiritual counseling, in lieu of incarceration. Our alternative sentencing proposal would allow Eli to continue his path of growth, while also allowing him to enormously benefit society. Aleph is also available to monitor Eli's compliance with the proposed program of community service and counseling, if requested by the Court.

---

[14] *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011); *see also* Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 460 (2016).
[15] Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 458-60 (2016).
[16] Richard Lowell Nygaard, *Crime, Pain, and Punishment: A Skeptic's View*, 102 Dick. L. Rev. 355, 362-63 (1998).


THE ALEPH INSTITUTE

1. <u>Home Confinement</u>

We propose that the Court sentence Eli to six months of home confinement. Home confinement is extremely restrictive, and importantly, with the Court's permission, Eli would be able to concurrently perform the volunteer community service and receive the counseling described below.

2. <u>Community Service</u>

   a. <u>Supporting his Synagogue; Coaching Hockey</u>

We respectfully propose that the Court consider imposing a sentence for Eli that includes a total of 300 hours of community service over a six-month period. Eli has committed to volunteer for six hours each week with his synagogue, the Bikur Cholim-Machzikay Hadath Congregation in Seattle, Washington, where he will engage in repairs, custodial work, and general upkeep. In addition, he has committed to volunteer for six hours each week with USA Hockey[17] by coaching children in ice hockey – a sport about which Eli is very passionate.

   b. <u>Deterrence Classes</u>

Eli has already shared his story by providing deterrence classes to business owners and members of his community, describing his misconduct, and its consequences on himself, his family, and his community. Eli's classes address the importance of making sure that all business activities are undertaken in strict compliance with the law. The presentation serves as a "cautionary tale" that helps deter others who may be tempted to follow a similar path of misconduct. Understandably, the process of "baring your soul" in public can be emotionally very challenging, but the punitive and rehabilitative effect on the individual, not to mention the benefit of general deterrence on others, can be very substantial.

These deterrence classes are already impacting participants. Sara Lowenthal, who attended one of Eli's classes, explains that Eli "confessed with deep sincerity to the unlawful and unethical actions he took, and recounted the various ways he harmed others through his actions." Sara writes that she was "struck by how humbled Eli was, and how his past experiences shaped him to become a better man, a better person." Another participant, Rivi Kholodenco, stated that "Eli's words struck a chord with me, as they reflected a genuine desire to take responsibility for his actions and to make

---

[17] www.usahockey.com.



amends." As a rehabilitative component of his reentry plan, Eli intends to provide a total of 10 deterrence classes.

3. <u>Spiritual Counseling</u>

    a. <u>*Crime and Consequences Class*</u>

Aleph's weekly class entitled *Crime and Consequences* explores 3,000 years of Jewish history and wisdom addressing criminal conduct, sentencing, deterrence, and rehabilitation. The course is designed to challenge participants, using a "tough love" approach, encouraging very direct and specific discussion about the participants' offense behavior. These classes serve to instill a deep commitment to a higher power that dictates that we respect the law of the land and other people's property.

The course and conversation are heavily focused on individual remorse, introspection, and commitment to growth and transformation. The classes encourage complete immersion and engagement to facilitate the individual's progress as they come to realize the massive and damaging impact their actions have had on society, and how critical it is for them to recommit themselves to supporting morals and ethics in the world. Class discussion includes very practical applications of these teachings in everyday life, so they will have a direct application in the participants' lives rather than remaining abstract theories.

These classes are already having a significant impact on Eli. Recently, he wrote, "I also was thinking about this week's [class] . . . 'do not steal,' and the subtleties that come along with what that means . . . for my personal journey, is that it specifically adds don't steal or deny or lie to your friend (or another person)." Eli will continue to attend and participate in these classes by Zoom as part of his program of rehabilitation.

    b. <u>*Rabbi Yudi Steiner*</u>

Rabbi Yudi Steiner has been a mentor and a dedicated Rabbi at the Chabad Center at George Washington University since 2014. Rabbi Steiner has agreed to mentor Eli by Zoom, serving as part of a strong support system, ensuring that he stays on the straight and narrow path and supporting his continued rehabilitation.

### III. **CONCLUSION**

Eli is remorseful for his actions, and he is making amends. He has learned a tremendous amount about himself, and he accepts responsibility for his actions. We humbly and respectfully ask that Your Honor consider his profound remorse, and the

THE ALEPH INSTITUTE

important steps he has already taken toward his rehabilitation, in imposing his sentence.

With the utmost respect and admiration for Your Honor's wise and compassionate decisions, I hope and pray that this submission will receive the consideration that will produce satisfactory results for society and for Eli.

With gratitude and prayerful wishes for all good.

Respectfully submitted,

*Yossi Bryski*

Rabbi Yossi Bryski
Director of Alternative Sentencing
The Aleph Institute

## APPENDIX:

## THE ALEPH INSTITUTE

## INTRODUCTION AND HISTORY

The Aleph Institute ("Aleph") is a 501(c)(3) non-profit organization committed to improving our criminal justice system so that it delivers sensible and fair justice for all stakeholders, and improves conditions of confinement and re-entry programs for those imprisoned. It assists the families of individuals facing punishment or serving sentences to deal with the many, often devastating collateral consequences of prosecution and imprisonment of a loved one, and supports members of the armed forces. Aleph's prevention program offers an array of educational opportunities designed to cultivate greater adherence to the law. By addressing the root causes of unlawful behavior, Aleph aims to inspire current and emerging generations to strive for higher standards, ethically and legally, and thus prevent collateral consequences before they even occur. Aleph also promotes the more widespread use of alternatives to incarceration in appropriate cases. Aleph supports individuals and families regardless of their religion or ethnicity, and provides all its services *pro bono*.

Aleph was created 42 years ago during a meeting between the late Honorable Jack Weinstein, U.S. District Judge for the Eastern District of New York, and Rabbi Sholom Lipskar, in Judge Weinstein's chambers. Rabbi Lipskar was inspired by The Lubavitcher Rebbe, Rabbi Menachem M. Schneerson, to create an organization that would work to change the sterile and often dehumanizing environment of prisons into environments of restoration, rehabilitation, and reformation. Similarly, Judge Weinstein understood that every person involved in the criminal justice system needs to be treated as an individual, a person, and not just a statistic.

Utilizing a spiritual focus, together with practical life skills and counseling, Aleph seeks to help individuals to recalibrate their lives, preparing them for effective reentry into society. Aleph's efforts during the past 42 years have served thousands of incarcerated individuals and their families, culminating in the reinforcement of strong family ties, and helping to facilitate a more successful transition back into the community. In Judge Weinstein's words, "[T]he Aleph Institute…understands and forces us to face the fact that each person deserves to be treated with respect as an individual personality and not as…a faceless number."[1]

Aleph has worked cooperatively and productively over the years with hundreds of current and former federal and state judges, prosecutors, probation officers, prison officials, and members of Congress from across the country – including former Attorneys General and Deputy Attorneys General, Bureau of Prisons directors, U.S. Attorneys, District Attorneys, and others. Aleph played an instrumental role in securing passage of the First Step Act of 2018, which brought about much-needed reforms to the federal criminal punishment system. Aleph has become a leading, credible voice in the ever-growing movement toward criminal justice reform

---

[1] Jack B. Weinstein, *Prison Need Not Be Mandatory: There Are Options Under the New U.S. Sentencing Guidelines*, 1 Judge J. 16, 28 (1989).

## ALEPH'S WORK IN ALTERNATIVE SENTENCING

*The Benefits of Alternatives to Incarceration*

The historical approach to sentencing, which uses incarceration as the default remedy for criminal conduct, has staggeringly high economic and societal costs. The United States spends nearly $300 billion annually to police communities and incarcerate 2.2 million people.[2] The societal costs of incarceration – lost earnings, adverse health effects, and the damage to the families of the incarcerated – are estimated at up to three times the direct costs, bringing the total burden of our criminal justice system to roughly $1.2 trillion each year.[3] Whenever a court sentences an individual, it is not a stretch to say that it sentences an entire family, and the children of incarcerated individuals will suffer a permanent scar. Specifically, research shows that children of incarcerated parents demonstrate maladaptive symptoms, including behavioral problems, difficulties at school, depression, and an increased risk of winding up in prison themselves.[4]

Our many years of experience have taught us that, in certain cases, the goals of the criminal justice system can be accomplished by measures other than incarceration. The historic mindset that incarceration should be the default approach to malfeasance is failing both society and the individual. The weight of the evidence suggests little or no correlation between longer prison sentences (more than ten years) and reduced recidivism; indeed, the National Institute of Justice has concluded that "long prison sentences do little to deter people from committing future crimes."[5] In fact, longer sentences may slightly *increase* recidivism when compared to shorter sentences.[6] The imposition of long sentences on a large scale "offers diminishing returns for public safety."[7]

Aleph has developed the view that custodial sentences should be reserved for individuals who have a history of violence, as well as for those individuals (including certain nonviolent offenders) who may otherwise pose a danger to society if allowed to remain at liberty. Rather than being strictly

---

[2] https://www.bjs.gov/index.cfm?ty=pbdetail&iid=6728, Table 1.

[3] https://joinnia.com/wp-content/uploads/2017/02/The-Economic-Burden-of-Incarceration-in- the-US-2016.pdf.

[4] https://www.publichealthpost.org/research/incarcerations-costs-for-families/

[5] William Fitzpatrick, a former President of the National District Attorneys' Association, April 26, 2016 letter to Senators Mitch McConnell and Harry Reid. *See also* Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME & JUST. 199, 201 (2013) ("There is little evidence that increases in the length of already long prison sentences yield general deterrent effects that are sufficiently large to justify their social and economic costs.")

[6] Roger Pryzybylski, John Maki, Stephanie Kennedy, Aaron Rosenthal and Ernesto Lopez, *The Impact of Long Sentences on Public Safety: a Complex Relationship* (November 2022), Council for Criminal Justice, Task Force on Long Sentences.

[7] *Id.*

punitive, criminal punishments should be designed to confer a benefit on the victims of the offense and society as a whole, and provide appropriate support and rehabilitative services to the defendant.[8] This sentencing philosophy is reflected in every case that Aleph accepts: Aleph's advocacy is deeply rooted in its conviction that incarceration should not be used absent a compelling need. We agree with William Fitzpatrick, the former President of the National District Attorneys' Association, who suggested that society "use prison for those we are afraid of, not those whom we are mad at based upon their behavior."[9]

*Aleph's Approach*

Aleph is among the very few non-profit organizations in the criminal justice arena that advocates not only for systemic changes but also directly on behalf of individuals facing criminal punishment. Aleph presents, to courts and prosecutors around the country, alternatives to incarceration for defendants who are selected by Aleph through a careful screening process. Aleph's Alternative Sentencing Department generally only advocates on behalf of individuals who are first-time offenders who have not committed a crime of violence. Aleph's alternative sentencing work is focused on individuals who have expressed clear and genuine remorse and a willingness to make amends for their conduct, and/or cases where there are compelling mitigating circumstances that justify a lower sentence. Aleph does not advocate for an alternative sentence in cases where it deems the individual to be a threat to public safety.

In addition to these requirements, Aleph makes an individualized assessment of the suitability of alternative sentencing, relying heavily on its vast experience compiled over four decades. Aleph has built a strong track record of credibility and success, in which many judges have imposed lower sentences based on one or more factors identified by Aleph in its written submissions and oral allocutions at sentencings. A recent review conducted by Covington & Burling LLP found that, in cases where Aleph made sentencing recommendations, sentencing judges relied on one or more factors identified by Aleph in imposing a sentence equal to or near to Aleph's recommendation in a majority of such cases.[10]

*Crafting an Alternative Sentencing Proposal*

Legal scholars, the United States Supreme Court, and the rabbis at Aleph have all observed that prison is often not conducive to "promoting correction and rehabilitation."[11] This is because rehabilitation is a "forward-looking" concept, promoting resocialization by emphasizing "personal

---

[8] Talmud Berachos 606b; Likutei Torah Nasso.

[9] William Fitzpatrick, a former President of the National District Attorneys' Association, April 26, 2016 letter to Senators Mitch McConnell and Harry Reid.

[10] In several cases, the sentencing judge *expressly* relied (in whole or in part) on Aleph's submission in determining the sentence.

[11] *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011); *see also* Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 460 (2016).

3

reform over punishment" and "illuminat[ing] the criminal's inner struggle,"[12] and as such only works when combined with an intense personal commitment to change. Though imprisonment may satisfy a thirst for retribution, the prison environment rarely inspires this commitment in the incarcerated individual. As Judge Richard Lowell Nygard once observed, "people – offenders included – change because they see something in themselves they do not like, and they reach down inside themselves and change it. Most criminal offenders who change for the better do so in spite of prison not because of it."[13]

Whereas prison may not promote rehabilitation, community-based programs like Aleph's proposals can be effective at restoring an individual's commitment to ethical behavior. Further, the same characteristics that may have made an individual such a source of strength for their own family and community will enhance the positive impact of their efforts for those with whom they interact under the terms of Aleph's proposal. We believe that individuals may best rehabilitate themselves through these efforts and that, in the process, they will push others to reach their full potential.

Aleph's sentencing proposals are designed to mete out appropriate, substantive punishment with the greatest benefit and lowest cost to society, while redirecting and enhancing an individual's value structure through social, therapeutic, and moral counseling and education. Every proposal Aleph submits carefully considers the traditional sentencing goals (retribution, rehabilitation, incapacitation, and deterrence), as well as the unique history and personal characteristics of each defendant, in an effort to provide effective correctional solutions. We typically advocate for sentences that include an alternative, non-custodial component – for example, community service, restorative justice, psychotherapy, or spiritual counseling. The non-custodial aspect of the sentence allows individuals to directly address the shortcomings that contributed to their offense, and also gives them an opportunity to use their sentence as a means to improve themselves and the world around them.

Aleph strives to craft alternative sentences that directly address the crime that brought an individual into the criminal justice system. An individual who serves the community that he or she has wronged, and employs his or her unique strengths to support those who need help, may have a truly redemptive and rehabilitative experience. For example, where appropriate, Aleph may recommend that individuals present "deterrence talks," whereby they share their personal experiences that led to their involvement in the criminal justice system, with other members of their community. In this way, the goals of both rehabilitation and deterrence are furthered: such individuals must directly and openly confront their wrongful conduct as a component of their rehabilitation, and others may be deterred from following a similar path. Selectively administered, such alternative sentences can provide individuals with an opportunity to improve themselves and the world around them, while also keeping them with their families and in their community, thereby limiting harmful collateral consequences.

---

[12] Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 458-60 (2016).

[13] Richard Lowell Nygaard, *Crime, Pain, and Punishment: A Skeptic's View*, 102 Dick. L. Rev. 355, 362-63 (1998).

*Taking a Leadership Role*

Motivated by this sentencing philosophy, Aleph endeavors to become a resource to those seeking to promote the more widespread use of alternative sentencing in appropriate cases, as well as the broader reform of the criminal justice system. In this role as advocate for a better approach to sentencing, we work to bring together thought leaders, judges, and prosecutors to improve the sentencing framework.

Aleph has sponsored and conducted [two summits](#) on sentencing and sentencing reform – one in 2016 at the Georgetown Law Center, entitled "[Alternative Sentencing Key Stakeholders](#)," and one in 2019 at Columbia Law School, entitled "[Rewriting the Sentence](#)." Both summits were attended by hundreds of criminal justice stakeholders, including federal and state judges, federal and state prosecutors, probation officers, private practitioners, academics, and others, from across the country. The [focus](#) of both summits was on bringing about a more enlightened and humane criminal justice system, in which individuals facing punishment are treated fairly and humanely, consistent with preserving the interests of their families, communities, victims, and society as a whole.

In October 2023, the Center for Justice and Human Dignity ("CJHD") (a 501(c)(3) non-profit organization that was incubated at and is supported by Aleph) will host another summit at George Washington University School of Law in Washington, DC, entitled "[Rewriting the Sentence II Summit on Alternatives to Incarceration](#)." This summit, which will build off Aleph's two prior summits, will serve as a dedicated forum where judges, prosecutors, and other decision-makers can come together to confront the complex challenges in addressing mass incarceration and its harmful consequences, including through the adoption of alternative sentencing programs and a reimagined approach to criminal justice. Together with CJHD, Aleph is also actively developing the Forum for Alternatives to Incarceration Resources, an online resource designed to provide a wealth of information and resources regarding alternative sentencing practices and implementation strategies throughout the United States.

## **SUPPORTIVE STATEMENTS ABOUT ALEPH**

Aleph has been publicly recognized numerous times for its outstanding contributions to improving the criminal justice system. The following is a selection of supportive statements about Aleph.

"The Aleph Institute is doing extraordinary fine work. Aleph helps in three ways. First, it explains to judges and the judicial system when and how alternatives to prison which protect the public are possible. Second, it helps those in prison develop their spiritual lives and maintain contact with their families and the world beyond their bars and barbed wire. Third, it assists those on the outside, particularly the children of prisoners, to retain their ties with prisoners. As a result of its good work, Aleph is widely known and respected by penal and judicial authorities."

> —**The Late Hon. Jack B. Weinstein,** Former Chief Judge of the U.S. District Court, Eastern District of New York.[14]

"For over 35 years Aleph has been championing and delivering justice to people who have been overlooked or forgotten by the rule of law, giving them hope, relief from suffering and the chance to improve their lives and fortunes. Both these individuals and the nation are the beneficiaries of Aleph's goodness and mission."

> — **Hon. Louis Freeh,** former U.S. District Judge, Southern District of New York, and former Director of the FBI, **[**at Aleph's 2016 ASKS Summit, Georgetown University Law Center.**]**

"While judging, in general, requires the application of law to the facts, sentencing requires more. It necessarily involves empathy and compassion, which Aleph surely brings to the table. At a time when sentencing principles are changing, Aleph's input is invaluable. It provides careful analysis of alternatives to incarceration entirely consistent with – and some may say better suited to – public safety. It provides a critical link between prisoners and their families and friends, making certain that prisoners – human beings – do not disappear behind the walls. Put simply, Aleph brings to bear its reservoirs of compassion and empathy, both before during and after punishment has been imposed, and has been doing so for 35 years."

> —**Hon. Nancy Gertner,** former U.S. District Judge, District of Massachusetts; Professor at Harvard Law School, **[**at Aleph's 2016 ASKS Summit, Georgetown University Law Center.**]**

"I think we are all in agreement this has been an extraordinary summit….35 years ago, a young Rabbi started some educational institutions, believing… that education was a fundamental right and goal of all people. He also had an interest—because of faith, belief and experience—that reforms could be made in the criminal justice system; to deal with defendants more humanely, to be aware of the impact on families, [and] the problem of reentry, and he started an institution to deal with these problems. Today we are the beneficiaries of that vision and that work."

> —**The Late Hon. Charles B. Renfrew,** U.S. Deputy Attorney General and U.S. District Judge, Northern District of California, **[**at Aleph's 2016 ASKS Summit, Georgetown University Law Center.**]**

"The Aleph Institute must be commended for its vision in bringing together at the ASKS Summit such diverse and interesting people and perspectives on the questions of criminal justice reform and sentencing alternatives in this era of mass incarceration."

> —**Hon. Judge Brooke Wells,** U.S. Magistrate Judge, District of Utah, at Aleph's 2016 ASKS Summit, Georgetown University Law Center.

---

*14 Supra*, note 1.

"You at Aleph are doing extraordinary things on behalf of the judges in my court. We appreciate the work that you do."

> —**Hon. Joy Flowers Conti,** Senior U.S. District Judge, Western District of Pennsylvania.

"Today judges and lawyers, prosecutors and law enforcement communities…are engaged in trying to make certain that our system is fair. It takes a collaborative partnership and that's why I am so glad that all of us are here committed to making certain our justice system is the best that it can be. And I thank [Aleph] for being here. And I thank you for your continued great work."

> —**Hon. Bernice Donald,** former U.S. Circuit Judge for the Sixth Circuit.

"The many problems in our system cannot be addressed by simply building more prison beds. One of the keys of an effective Department of Corrections will be…great emphasis on alternatives to incarceration. Organizations such as the Aleph Institute will be key to any community-based programs."

> —**The Late Hon. Lawton Chiles,** former Governor, Florida.

"[Criminal Justice reform] is hard work and even if we do it thoughtfully, and with the openness and humanity it requires, there will inevitably be setbacks and disappointments…But it is work that draws its sustenance from the divine spark in each of us. I commend Aleph for its decades of commitment, and for convening such an impressive group of people and organizations."

> —**Hon. Jeremy Fogel,** former U.S. District Judge, Northern District of California, and former Director of the Federal Judicial Center, at Aleph's 2019 Rewriting the Sentence Summit, Columbia University Law School.

"Over the years, I have worked pro-bono on a number of matters with the Aleph Institute. The Institute's staff are incredibly dedicated, caring, smart, and hardworking. The Institute provides invaluable assistance to people from all walks of life and helps them find the justice they deserve with the compassion they need."

> —**Larry Thompson,** former U.S. Deputy Attorney General and former U.S. Attorney, Northern District of Georgia.